IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

ERIC VANDERVEER,                          )
                                          )
                 Plaintiff,               )    TC-MD 110271N
                                          )
         v.                               )
                                          )
WASCO COUNTY ASSESSOR,                    )
                                          )
                 Defendant.               )    **DECISION**

Plaintiff appeals the 2010-11 real market value and exception value of property identified

as Account 4992 (subject property) for the 2010-11 tax year.  A trial was held by telephone on

August 17, 2011.  Plaintiff appeared and testified on his own behalf.  Rena Hunley (Hunley), real

estate broker, and Doug McGuire (McGuire), friend of Plaintiff, testified on behalf of Plaintiff.

Darlene Lufkin (Lufkin), Chief Appraiser, appeared and testified on behalf of Defendant.

Plaintiff's Exhibits 1 through 10 were offered and received without objection.  Defendant's

Exhibit A was offered and received without objection.

## I.  STATEMENT OF FACTS

The subject property "home has 1644 [square feet] on the main level with 4 bedrooms

and 2 bathrooms, 256 [square feet] attic area, and 748 [square feet] unfinished basement."

(Def's Ex A at 5.)  The subject property was built in 1922.  (Def's Ex A at 2.)  Lufkin

determined the "effective year built" to be 1940[1] with 75 percent physical depreciation and 65

percent construction complete.  (*Id.*)  Plaintiff asked Lufkin how she determined the "effective

year" of 1940 for the subject property and she testified in response that it is based on her

/ / /

---

[1] Defendant's Exhibit A at 2 states the effective year to be 1966.  However, Lufkin's testimony and other pages of her report indicate the effective year to be 1940.  (*See* Def's Ex A at 5.)

appraisal judgment. Plaintiff provided a plan of the subject property residence as well as photos of the subject property residence that reference the plan. (Ptf's Exs 1, 4, 5.)

Plaintiff testified that at the time he acquired the subject property in 2003, it was run-down; he provided pictures showing the condition of the subject property in 2003. (Ptf's Ex 4 at 1, 2.) Plaintiff provided numerous photographs of both the exterior and interior of the subject property and testified that those photos were demonstrative of the subject property's condition as of January 1, 2010. (Ptf's Ex 4 at 3-17.) Plaintiff testified that subsequent to January 1, 2010, the only changes to the subject property were the addition of a new wall in the kitchen and electrical wiring. (*See* Ptf's Ex 5.) McGuire testified that he is a long-time friend of Plaintiff. He testified that the condition of the subject property as of March 2011 was the same as its condition as of January 1, 2010. Plaintiff testified that his photos of the subject property were taken in July 2011 but they reflect the subject property's condition as of January 1, 2010.

A.      *Subject property lot and land value*

Plaintiff testified that the subject property lot has a steep slope and he measured the amount of the lot "lost" as a result of that slope. (*See generally* Ptf's Ex 8.) He testified that the lot is 100 feet by 100 feet in size. Plaintiff testified that portions of the north and west sides of the lot are completely unusable because they extend beyond the "rock cliff" bisecting Plaintiff's property. (*See id.* at 3.) He testified that the usable part of the lot amounts to only 6,800 square feet out of the total 10,000 square feet; he considers 3,200 square feet to be unusable. Plaintiff testified that he thinks there is no value to the "unusable" portion of the subject property lot.

Plaintiff stated that "access to [the subject property] lot is via dirt and gravel over boulders." (Ptf's Ex 8 at 1.) He stated that the yard is "extremely rocky" and that "limits landscaping potential." (*Id.*) Plaintiff stated that "[t]he yard has not been improved since

purchase, [it is] still all weeds and junk grass." (*Id.*) He could find no comparable land sales in the county. (*Id.*)

> "Rena Hunley suggested a max land RMV of $50,000, $48,075 trended back to 2010, but I suspect she was basing that on the county's numbers of .23 acre and not accounting for the effective lot size. My suggestion is to scale back Rena Hunley's number slightly to compensate for the topo adj. and use $46,000 for 2010."

(*Id.*) Lufkin testified that she made a 10 percent adjustment for the portion of the subject property lot affected by "topographical conditions." Plaintiff testified that he thinks 32 percent of the subject property lot is affected and the "topographical adjustment" should be increased to 32 percent. (*See* Ptf's Ex 8 at 1.)

Lufkin testified that she identified four land sales with adjusted sales prices ranging from $66,130 to $71,880. (Def's Ex A at 7, 8.) She testified that she made adjustments for lot sizes and views but did not make adjustments for topography because The Dalles is "built on a hill" and there are lots of rocky properties with similar topographical issues as the subject property. Lufkin determined that all of the land sales are inferior to the subject property with respect to size but sale 4 has a superior view. (*Id.* at 7.) Lufkin testified that Defendant's supplemental land sale study analyzing 2008 and 2010 sales "reflect[s] a value range for [the] subject [property] from [$]61,600 to $78,470." (*Id.* at 7, 9.)

B.      *Plaintiff's value evidence*

Hunley testified that half of the subject property lot is not usable and that she would estimate a maximum lot value of $50,000 for the subject property. She testified that, "today," someone would pay only $50,000 for the subject property because it is not finished. Hunley testified that all of the sales she identified were "arm's-length." (*See* Ptf's Ex 2.) She testified that sale 4 was a "short sale." (*See id.*) Lufkin testified that all but two of Hunley's sales were

short sales and noted the lack of adjustments. Hunley provided six comparable sales from The

Dalles, Oregon, that occurred between March 22, 2010, and May 20, 2011. (*Id.* at 2-3.) Sale 4,

which Hunley identified as a "short sale," sold for $49 per square foot. (*Id.* at 3.) The remaining

five properties sold within the range of $57 to $104 per square foot. (*Id.* at 2-3.) Plaintiff also

provided a "market analysis" prepared by Bob McFadden (McFadden), real estate broker, in

which he concluded a value of $104,000 for the subject property. (Ptf's Ex 3.) McFadden's

"market analysis" is dated April 1, 2011, and states that his value conclusion is "meant to reflect

the value of the home in its present condition in the current market." (*Id.* at 1.) McFadden was

not available to testify at trial.

Plaintiff testified that a property located at 1214 Trevitt (Trevitt property), about three

blocks from the subject property, sold on May 26, 2011, for $153,500. (*See* Ptf's Exs 7, 9 at 1.)

He testified that the Trevitt property is similar to the subject property with respect to its age,

remodel, windows, fence, and total square feet of living space. Plaintiff testified that the

difference is that the Trevitt property remodel is complete. He testified that the Trevitt property

is a useful example of what price the subject property would command on the market after the

remodel is complete. Plaintiff testified that the Trevitt property sale supports a value of $97,180

for the subject property. (*See* Ptf's Ex 7 at 5.) Lufkin testified that there is no information about

the market conditions of the Trevitt property sale such as seller motivation. Plaintiff responded

that the Trevitt property was on the market for six months.

C.      *Defendant's value evidence*

Lufkin testified that she concluded a value of $154,920 under the cost approach. (Def's

Ex A at 3.) She testified that the land roll value of $68,620 is "supported by area land sales."

(Def's Ex A at 5.) Lufkin determined that the "base appraisal year is 1995" and she used the

Department of Revenue 1993 residential cost factor book. (*Id.*) She testified that she inspected the subject property on March 8, 2011, and that she accepts Plaintiff's testimony that the condition of the subject property as of March 2011 was the same as the condition as of January 1, 2010. Lufkin testified that she determined a "Quality Class 3 at 50% physical depreciation and an effective age of 1940" for the subject property improvements. (*Id.*) She stated, based on her March 2011 inspection, that:

> "[her] cost approach [] changed to an estimated condition when complete and a percent complete applied to reflect current condition. [Plaintiff] stated he agreed with the 65% complete applied to reflect current level of completion on the Construction Progress Report. With an estimate of 75% good upon completion the overall adjustment of 49% is in line with the 50% physical depreciation on the 2010 appraisal."

(*Id.* at 6.)

Lufkin determined a value of $153,770 under the sales comparison approach. (Def's Ex A at 3.) She identified six sales from 2009 of "mostly older homes in better conditions than original construction year" that "represent [the] condition for [the] subject [property] when remodel-renovation is complete." (Def's Ex A at 10.) The unadjusted sales prices for the six sales are as follows: $148,000 (sale 1); $152,000 (sale 2), $140,000 (sale 3); $183,500 (sale 4); $198,400 (sale 5); and $220,000 (sale 6). (*Id.* at 11.) Lufkin testified that she made an adjustment of $2,000 per year "for each year difference of effective age" to account for differences in condition. (*See id.* at 10) She made a time adjustment to sale 4 only and gave less weight to sales 4, 5, and 6 because those sales required "higher overall adjustments." (*Id.*) Lufkin determined "a value range indicated from $153,770 to $157,990" based on the first three comparable sales. (*Id.*) She testified that sale 2 is the best comparable having required only one percent net adjustments; she concluded an adjusted sales price of $153,770. (*Id.*)

Lufkin testified that she also looked for homes with "condition issues" and found four[2] sales of "comparable homes needing some work that could be compared to subject property"; two from late 2009, one from early 2010, and one from 2011 that she time-trended. (Def's Ex A at 12.) She testified that for "condition" differences she used an adjustment of $1,500 "per year of effective age difference."[3] (*See* Def's Ex A at 12, 13.) The unadjusted sales prices of the properties with "condition issues" identified are stated as follows: $127,000 (sale 1); $129,000 (sale 2); $125,000 (sale 3); and $85,000 (sale 4). (Def's Ex A at 13.) Lufkin determined adjusted sales prices ranging from $154,335 to $159,860. (*Id.*) Lufkin testified at trial that sale 3 should be corrected as follows: the unadjusted sale price was $87,500; the land value is $64,869 with an adjustment of $3,760; the adjusted sale price is $123,680; and the net adjustments are 41 percent. (*See* Def's Ex A at 13.)

Lufkin's sale 1 "was last inspected in 1996. The record shows the home adjusted with a 30% physical depreciation, and an effective age of 1920 is average for construction year of 1920. The front porch and front exterior is damaged by fire which did not affect the interior." (Def's Ex A at 12.) Sale 1 is similar to the subject property with respect to neighborhood, view, appearance, zoning, year built (1920), lot size (.21 acres), and number of bathrooms (2). (*Id.* at 13.) Sale 1 has 2,299 square feet of living space, 850 square feet of basement, and 312 square feet of garage. (*Id.*) Lufkin adjusted the $127,000 sale price down $2,970 for the "land RMV," up $30,000 for the "effective year," down $11,970 for square feet of living area, down $1,530 for square feet of basement, up $1,000 for "heating/cooling," up $5,250 for garage square feet, and up $7,720 for "yard/other imp[rovements]," for an adjusted sale price of $154,500.

---

[2] Defendant's Exhibit A at 12 states that "five" sales were identified. However, only four sales are discussed and identified in Lufkin's sales comparison grid. (Def's Ex A at 13.)

[3] Lufkin testified that the "$2000" condition adjustment stated on page 13 of Exhibit A is a typographical error; she used an adjustment of $1,500.

D.     *Remodel and exception value*

Plaintiff testified that the previous "shop" portion of the subject property was converted to the foyer.  (*See* Ptf's Ex 9 at 2.)  He testified that only four square feet of the foyer were changed, but Defendant added $7,000 in value to the subject property based on that change. Plaintiff testified that the subject property foyer was complete in 2010 with the exception of the roof.  (*See* Ptf's Ex 10 at 1 (photo of subject property as of January 1, 2010).)  He testified that the foyer was 45 percent complete as of January 1, 2010, but it added nothing to the value of the subject property because the subject property was overvalued in previous periods.

Plaintiff testified that he relied on the publication *Remodeling Magazine's* "annual Cost vs. Value Report" to determine the value of changes to the subject property between 2010 and 2011.  (*See* Ptf's Ex 9 at 3.)  Plaintiff testified that he multiplied the cost of materials for the roof, $524.20, by three for a "contractor cost" estimate, and then scaled that figure back by 59 percent, the national "garage door replacement" cost recouped percentage.  (*See* Ptf's Ex 9 at 3, 4 (invoice from Oregon Roofers Supply).)  Lufkin testified that the data presented in the *Remodeling Magazine* report is not necessarily applicable to The Dalles market.  Plaintiff responded that the report demonstrates that cost does not necessarily equate to value.

Plaintiff testified that the 2009-10 real market value of the subject property, $174,500, was too high.  He testified that if a downward trend of 17 percent were applied to the subject property's 2009-10 real market value, it would result in a value of $144,545 as of January 1, 2010.  Plaintiff testified that any value below $144,545 precludes inclusion of exception value. Lufkin responded that exception value does not include market trends; exception value is determined after real market value has been determined.

/ / /

Lufkin described the subject property home as "in [the] process of remodel." (Def's Ex A at 6.) She stated that the March 2011 inspection revealed "new added dormer in attic space, some areas of new drywall, bathroom updated, original kitchen gutted/removed and temporary kitchen function added, missing floor coverings, some exterior siding has been replaced, heating not yet used in all areas." (*Id.*) Lufkin concluded that "the construction start on the enclosed porch contributed no value in the 2010 assessment date and is added to the 2011 record at 50% complete." (Def's Ex A at 5.) She determined an exception value of $14,350, noting that "2008 Minor Construction Exception on the account was added to the MAV Base due to the total RMV of additions in 5 years threshold per ORS 308.149(6) was triggered." (*Id.* at 6.)

Lufkin provided a "valuation history" of the subject property. (Def's Ex A at A99.) The valuation history states that the subject property was purchased in a bank sale on November 24, 2003, for $59,900. (*Id.*) The subject property's 2003-04 real market value is reported as $65,000 and its maximum assessed value as $102,002. (*Id.*) No exception value was added to the subject property from tax year 2003-04 through tax year 2006-07. (*Id.*) The 2007-08 tax year states exception value of $16,730, noting "New Gar 84% complete, res changed from 50% to 40% good?"; the 2008-09 tax year states exception value of $3,730 and notes "Gar to 98%, res roof upgrade – minor construction below $10k; and the 2010-11 tax year states exception value of $14,160 and notes ""Gar 100% complete, res condition from 40% to 50% good, shed removed, and changed to other improvements." A note following the 2010-11 tax year states "5 year $25,000 kicks in -2008 adds $3730, 2010 adds $10430." (*Id.*)

The 2010-11 roll real market value of the subject property is $154,400 and the 2010-11 exception value is $14,160; those values were sustained by the Board of Property Tax Appeals. (Ptf's Compl at 2.) The 2010-11 maximum assessed value of the subject property is $134,046.

(*Id.*) Plaintiff requests that the 2010-11 real market value be reduced to $99,072.[4] Plaintiff requests that the 2010-11 exception value be removed and the maximum assessed value be adjusted accordingly. Defendant requests that the 2010-11 roll values be sustained.

## II. ANALYSIS

The issues before the court are the real market value and exception value of the subject property for the 2010-11 tax year. "Real market value is the standard used throughout the ad valorem statutes except for special assessments." *Richardson v. Clackamas County Assessor*, TC-MD No 020869D, WL 21263620 at *2 (Mar 26, 2003) (citing *Gangle v. Dept. of Rev.*, 13 OTR 343, 345 (1995)). Real market value is defined in ORS 308.205(1), which states:

> "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."[5]

The assessment date for the 2010-11 tax year was January 1, 2010. ORS 308.007; ORS 308.210.

Plaintiff has the burden of proof and must establish his case by a preponderance of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). "[I]t is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the [real market value] of their property." *Poddar v. Dept. of Rev.,* 18 OTR 324, 332 (2005) (citing *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002)). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof." *Reed v. Dept. of Rev.,* 310 Or 260, 265, 798 P2d 235 (1990). "[T]he court has jurisdiction to

---

[4] In his Complaint, Plaintiff requested a 2010-11 real market value of $105,211. He revised his request at trial on August 17, 2011.

[5] All references to the Oregon Revised Statutes (ORS) and to the Oregon Administrative Rules (OAR) are to 2009.

determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.

A.      *Real market value -- approaches of valuation*

"Real market value in all cases shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue[.]" ORS 308.205(2). There are three methods of valuation that are used to determine real market value: 1) the cost approach, 2) the sales comparison approach, and 3) the income approach. *Allen v. Dept of Rev.*, 17 OTR 248, 252 (2003); *see also* OAR 150-308.205-(A)(2)(a) (stating that all three approaches must be considered although all three approaches may not be applicable to the valuation of the subject property). The approach of valuation to be used is a question of fact to be determined on the record. *Pacific Power & Light Co. v. Dept. of Revenue.*, 286 Or 529, 533 (1979). Both parties considered comparable sales. Neither party considered the income approach.

Defendant determined a value under the cost approach. "The cost approach is 'particularly useful in valuing new or nearly new improvements.' " *Magno v. Dept. of Rev.*, 19 OTR 51, 55 (2006). "The [cost] approach is especially persuasive when land value is well supported and the improvements are new or suffer only minor depreciation and, therefore, approximate the ideal improvement that is the highest and best use of the land as though vacant." Appraisal Institute, *The Appraisal of Real Estate* 382 (13th ed 2008). Given the age and condition of the subject property, the court finds that the cost approach does not provide a reliable indication of the total real market value of the subject property.

OAR 150-308.205-(A)(2)(c) states, in pertinent part:

"In utilizing the sales comparison approach only actual market transactions of property comparable to the subject, or adjusted to be comparable, will be used. All transactions utilized in the sales comparison approach must be verified to ensure they reflect arms-length market transactions."

"The court looks for arm's-length sale transactions of property similar in size, quality, age and location * * * in order to determine the [real market value]" of the subject property. *Richardson v. Clackamas County Assessor*, TC-MD No 020869D, WL 21263620 at *3 (Mar 26, 2003).

Plaintiff's comparable sales occurred after the January 1, 2010, assessment date and were not adjusted for time or other differences from the subject property. Plaintiff's sales are, therefore, afforded no weight. Defendant's first six comparable sales of "older homes in better conditions than original construction year" that represent the condition of the subject property after the remodel is complete are not comparable to the subject property in its condition as of January 1, 2010. (Def's Ex A at 10.) Lufkin gave weight to the first three sales, noting that the net adjustments were seven percent, one percent, and ten percent, respectively. (*Id.*) However, the gross adjustments to those sales ranged from, approximately, 57 to 99 percent of the unadjusted sales prices. The court also notes that the unadjusted sales prices of sales 1, 2, and 3 range from $140,000 to $152,000, all less than the value concluded for the subject property by Defendant. The extensive adjustments made to Lufkin's first six sales suggest that those sales are not comparable to the subject property and cast doubt on her value conclusion.

Defendant's four comparable sales with "condition issues" similar to the subject property are better comparables for the subject property. The unadjusted sales prices of those properties range from $85,000 to $129,000. Lufkin made adjustments of $15,000, $30,000, and $30,000 to three of the four sales based on the "effective year" and testified that the "effective year" adjustments are meant to account for differences in condition. It is unclear to the court why large adjustments for "effective year" (condition) were made to four properties reportedly selected because of "condition issues" similar to the subject property. If those adjustments are removed, the indicated values of the four comparable sales are $124,500 (sale 1), $154,355 (sale 2),

$110,000 (sale 3), and $127,020 (sale 4). Excluding the $30,000 "effective age" adjustment, sale 1 is the best comparable sale based on both gross adjustments and the number of adjustments.

Based on the comparable sales presented by Defendant and Plaintiff's testimony concerning the condition of the subject property as of January 1, 2010, the court finds that the real market value of the subject property as of January 1, 2010, was $124,000.

B.     *Exception value*

The value of new property and new improvements is commonly referred to as "exception value." " 'New property or new improvements' means changes in the value of property as the result of: (A) [n]ew construction, reconstruction, major additions, remodeling, renovation or rehabilitation of property." ORS 308.149(5)(a). New improvements do not include "minor construction," which is defined as "additions of real property improvements, the real market value of which does not exceed $10,000 in any assessment year or $25,000 for cumulative additions made over five assessment years." ORS 308.149(5)(b), (6). "The value of new property or new improvements shall equal the real market value of the new property or new improvements reduced (but not below zero) by the real market value of retirements from the property tax account." ORS 308.153(2)(a). Exception value "must exclude factors such as changes in inflation, market demand, and construction codes." *Magno*, 19 OTR at 61 (citing *Hoxie v. Dept. of Rev.*, 15, OTR 322, 326 (2001)).

Lufkin noted changes to the subject property including "new added dormer in attic space, some areas of new drywall, bathroom updated, original kitchen gutted/removed and temporary kitchen function added, missing floor coverings, some exterior siding has been replaced, heating not yet used in all areas." (Def's Ex A at 6.) Plaintiff testified that the foyer was 45 percent complete as of January 1, 2010, but concluded that it had no value based on previous

overvaluation by Defendant. Plaintiff's additional testimony concerning the ongoing remodel focused on the time period after the January 1, 2010, assessment date, which is not relevant to the determination of the 2010-11 exception value. Plaintiff did not present competent evidence of the 2010-11 exception value of the subject property. The court finds that there is no support for a reduction in the 2010-11 exception value of the subject property.

### III.  CONCLUSION

After carefully considering the testimony and evidence presented, the court finds that the 2010-11 real market value of the subject property was $124,000. The court finds that the evidence presented does not support a reduction in the 2010-11 exception value of the subject property.  Now, therefore,

IT IS DECIDED that the 2010-11 real market value of property identified as Account 4992 was $124,000.

IT IS FURTHER DECIDED that Plaintiff's appeal of the 2010-11 exception real market value is denied.

Dated this ___ day of December 2011.

_____
ALLISON R. BOOMER
MAGISTRATE PRO TEMPORE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Magistrate Pro Tempore Allison R. Boomer on December 16, 2011. The Court filed and entered this document on December 16, 2011.*